# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| JAMES T. KEMP, | ) | |
| Plaintiff, | ) | JURY DEMAND |
| v. | ) | No. _____ |
| LARRY CUNNINGHAM, | ) | Judge _____ |
| Defendant. | ) | Magistrate Judge _____ |

## COMPLAINT

### Parties

**1.** The plaintiff, James T. Kemp, is a resident of Hendersonville, Sumner County, Tennessee.

**2.** The defendant, Larry Cunningham resides at 129 Windham Drive, Hendersonville, Sumner County, Tennessee and has a business address of 1050 Glenbrook Way, Suite 480-164, Hendersonville, Tennessee, where he does business as iNet Web Consultants.

### Subject Matter Jurisdiction

**3.** This complaint asserts a claim arising under the anti-fraud provisions of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, which was promulgated pursuant to that statute by the Securities Exchange Commission. Because that claim arises under the laws of the United States, this court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. 1331. In

1

addition, this court has ancillary jurisdiction over the subject matter of plaintiff's claims under Tennessee law.

**Background Facts**

4. In 2008, the defendant sold plaintiff 50,000 shares of the common stock of City Netlinks, Inc for a price of $150,000. City Netlinks was a Tennessee corporation formed by defendant to engage in the business of selling, creating, and hosting internet websites for its customers. The defendant and CityNetlinks were engaged in that business when defendant persuaded plaintiff to invest in the company.

5. When defendant sold plaintiff shares of the common stock of City Netlinks, defendant told plaintiff only that plaintiff was purchasing stock and made no representations or disclosures concerning the voting rights of plaintiff's stock.

6. A complete and accurate copy of the stock certificate issued to plaintiff when he purchased the City Netlinks stock from defendant is attached to this complaint as Exhibit 1.

7. Plaintiff and defendant both signed a written shareholders agreement when plaintiff invested in City Netlinks stock. A complete and accurate copy of that agreement is attached to this complaint as Exhibit 2.

8. The shareholders agreement stated in paragraph 9, "All stock sold to outside shareholders shall be '$1.00' capital stock non-voting." Defendant considered plaintiff to be one of the "outside shareholders" who purchased "$1.00" non-voting stock, as described in paragraph 9 of the shareholders agreement, but defendant never disclosed that material fact to plaintiff. Plaintiff reasonably understood and believed that paragraph 9 of the shareholders agreement referred to shareholders who would

2

invest in City Netlinks in the future, not to plaintiff himself. Recently, defendant has maintained that plaintiff's stock was non-voting stock, and that plaintiff was thus not entitled to vote on a transaction in which defendant sold substantially all of City Netlinks' assets.

9. Plaintiff's stock certificate does not specify that his stock was non-voting stock. In addition, plaintiff paid $3.00 per share for his $50,000 shares of City Netlinks. As a result, he did not understand, believe, or intend that his shares were included as part of the "$1.00" non-voting shares that were described in paragraph 9 of the shareholders agreement.

10. Under Tennessee law, Tenn. Code Annot. § 48-17-202(a), all corporate stock has voting rights unless the corporation's charter authorizes the issuance of non-voting stock. The charter of City Netlinks does not authorize the issuance of non-voting stock. In connection with the sale of stock to plaintiff, defendant did not disclose the material fact that plaintiff was purchasing non-voting stock that was not authorized by the company's charter.

11. In reasonable reliance upon the accuracy of the documents provided by defendant in connection with plaintiff's purchase of City Netlinks stock and in reasonable reliance upon defendant's compliance with his duty to make truthful representations and disclose material facts necessary to make statements made not misleading, plaintiff purchased the City Netlinks stock only because he understood and believed that he was purchasing voting common stock.

12. At the time defendant sold plaintiff 50,000 shares of City Netlinks common stock, the charter of City Netlinks did not authorize the issuance of more than 100 shares of stock. The plaintiff was not aware of that limitation at that time, and

3

defendant did not disclose to plaintiff the material fact that defendant was selling plaintiff shares that were not authorized by City Netlinks' charter.

13. The 50,000 shares of City Netlinks stock that plaintiff purchased were issued directly by City Netlinks to plaintiff, and the $150,000 paid by plaintiff for those shares was deposited in the bank account of City Netlinks as additional capital to be used for payment of legitimate business costs and expenses.

14. In order to induce plaintiff to purchase shares of City Netlinks stock, defendant made representations to plaintiff that defendant would use the proceeds of plaintiff's investment to grow the business of City Netlinks, including the hiring of additional employees, including commissioned salespersons, and implementation of a marketing plan in order to increase website sales and grow City Netlinks into other locations across the country. Those representations were false at the time defendant made them because at that time defendant had no then-present intent to use the proceeds of plaintiff's investment for any of those purposes.

15. Prior to plaintiff's purchase of City Netlinks stock, defendant used the bank account of City Netlinks as if it were his personal account, regularly and routinely using company funds for personal purposes, such as purchases of food at restaurants and other personal goods and services at grocery stores and other retail stores.

16. At the time defendant sold City Netlinks stock to plaintiff, defendant intended to continue to use company funds for personal purposes and considered the proceeds of plaintiff's investment to be a new infusion of funds that defendant could and would convert to his personal use. While falsely representing his plans for the use of the proceeds of plaintiff's investment, defendant did not disclose to plaintiff his past practice of using company funds for personal purposes or his intent to use some or all of

plaintiff's investment funds for those purposes. Those undisclosed facts were material to plaintiff's investment decision.

17. Prior to plaintiff's purchase of City Netlinks stock, defendant had mismanaged City Netlinks and used company funds for personal purposes to an extent that defendant was compelled to seek investment funds from plaintiff to replenish losses that resulted from defendant's mismanagement and self-dealing. Defendant continued to mismanage City Netlinks and convert its company funds to personal use after receiving plaintiff's $150,000 investment.

18. Although plaintiff was a significant shareholder of City Netlinks, defendant did not provide plaintiff with the periodic financial reports required by the Tennessee Business Corporation Act and did not otherwise keep plaintiff informed of the financial condition of City Netlinks or otherwise report to plaintiff on the status of the business. Defendant first provided some of that information in November and December 2010 and January 2011 in response to inquiries from a lawyer representing plaintiff.

19. By the middle of 2010, City Netlinks was in debt and unable to pay its debts as they came due, in large part because of defendant's mismanagement and conversion of company funds to personal use over a period of years. As a result, defendant sold substantially all of the assets of City Netlinks to KSC National, LLC in August 2010 for $115,000. The assets sold consisted primarily of customer accounts that generated a regular monthly revenue stream. Defendant used the proceeds of the asset sale to pay debts of City Netlinks, including payments of debts that benefitted defendant personally. Had defendant not used significant amounts of City Netlinks funds for personal purposes, it would not have been necessary to sell the company's assets to pay its debts.

20. In connection with the sale of the assets of City Netlinks in August 2010, defendant changed the name of City Netlinks to Advanced Web Marketing, Inc. (plaintiff continues to refer to the company in this complaint as City Netlinks).

21. Defendant did not notify plaintiff of the sale of City Netlinks' assets until November 2010, and then did so only after a demand for company information from a lawyer representing plaintiff.

22. Although Tennessee law, Tenn. Code Annot. § 48-22-102, requires a shareholder vote to approve a sale of substantially all of a corporation's assets, defendant never gave plaintiff an opportunity to vote on the sale of City Netlinks' assets. Later, in response to inquiries from plaintiff's counsel in 2011 and 2012, defendant first asserted that plaintiff's stock was non-voting stock.

21. In the asset purchase agreement under which KSC National, LLC purchased the assets of City Netlinks, defendant falsely represented and warranted that he owned all of the issued and outstanding shares of City Netlinks. He did so in order to conceal plaintiff's ownership interest and prevent plaintiff from learning of the asset sale before defendant completed the sale and used the proceeds to pay debts that he might otherwise be required to pay individually.

22. In November 2010, defendant represented to plaintiff that all of the proceeds of the asset sale had been used to pay company debts, that virtually none of the funds remained, and that City Netlinks had no value. City Netlinks no longer conducts any business. Recently, City Netlinks was administratively dissolved by the Tennessee Secretary of State.

23. Since the sale of City Netlinks' assets, defendant has conducted business as iNet Web Consultants. Information that defendant has posted on his LinkedIn social

6

media website confirms that iNet Web Consultants is engaged in substantially the same business as City Netlinks.

24. After obtaining plaintiff's $150,000 investment through false representations and misleading disclosures, defendant converted City Netlinks funds to personal use and otherwise mismanaged City Netlinks to such an extent that the destroyed the company's ability to remain in business. He then engineered an unlawful sale of City Netlinks' assets without the required shareholder vote; used the proceeds to pay debts that resulted from his own mismanagement, some of which were owed to creditors who would have required payment from defendant individually if the debts had not been paid with the proceeds of the asset sale; and then shut down City Netlinks as a going concern. Afterwards he started a new business doing substantially the same business as City Netlinks, but with plaintiff having no ownership interest.

## Claims

### Count 1: Violation of the Securities Exchange Act of 1934 and Rule 10b-5

25. In selling shares of City Netlinks to plaintiff, as described above, defendant made the false representations of material facts described above and failed to disclose material facts necessary to make the statements made not misleading, also as described above.

26. Defendant acted willfully and knowingly in making false representations of material facts and failing to disclose necessary material facts to plaintiff in connection with defendant's sale to plaintiff of 50,000 shares of City Netlinks stock. Alternatively, defendant acted with reckless disregard for the truth and adequacy of the

7

representations he made to plaintiff in order to induce plaintiff to invest $150,000 in City Netlinks.

27. Plaintiff reasonably relied upon defendant's false representations and failure to disclose material facts in purchasing 50,000 shares of City Netlinks stock. Had defendant made truthful and adequate disclosures of the true facts, plaintiff would not have invested in City Netlinks stock.

28. Plaintiff has incurred damages as a proximate result of defendant's false representations and failures to disclose material facts. Those damages include the full amount of plaintiff's $150,000 investment, as well as the reasonable returns that plaintiff could have earned on those funds since the date of his investment in City Netlinks.

29. The acts and omissions of defendant described in this count based on the facts alleged in the paragraphs preceding this count were violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder by the Securities Exchange Commission. Defendant is liable to plaintiff for all of the remedies authorized by law for such violations.

### Count 2: Violation of the Tennessee Securities Act

30. In addition to violating the federal securities law described in Count 1 above, the acts and omissions of defendant described in paragraphs 1-29 above also were violations of the anti-fraud provision of the Tennessee Securities Act of 1980, Tenn. Code Annot. §§ 48-2-101 *et seq.* In particular, defendant violated Tenn. Code Annot. § 48-2-121(a).

31.     Defendant is liable to plaintiff for the remedies authorized by Tenn. Code Annot. § 48-2-122, including rescission of plaintiff's $150,000 purchase of City Netlinks stock, interest, damages, costs and attorney's fees.

**Count 3:     Common Law Fraud**

31.     In addition to violating the federal and state securities laws described above in Counts 1 and 2, the acts and omissions of defendant described in paragraphs 1-31 above constitute fraud under the common law of Tennessee, and defendant is liable to plaintiff for all damages incurred by plaintiff as a proximate result of defendant's fraud, including the value of $150,000 investment in CityLinks stock, with interest.

**Count 4:     Breach of Fiduciary Duty and Misappropriation of Corporate Opportunities**

32.     As the controlling shareholder of City Netlinks, defendant owed fiduciary duties to plaintiff as a minority shareholder.

33.     By acting as described in paragraphs 1-31 above, defendant breached the fiduciary duties that he owed to plaintiff. His breaches of fiduciary duty include his use of City Netlinks corporate funds for personal purposes and his mismanagement of City Netlinks, which led to its eventual demise.

34.     In addition, as controlling shareholder and as an officer and director of City Netlinks, defendant had a fiduciary duty not to appropriate corporate opportunities of City Netlinks for his personal use and benefit. Defendant has breached that duty by engaging in the business that he conducts as iNet Web Consultants, as alleged above.

35.     Plaintiff has incurred damages as a proximate result of defendant's breaches of fiduciary duty, including the loss of plaintiff's $150,000 investment and the

reasonable returns that investment would have earned but for defendant's unlawful acts and omissions. Defendant is liable to plaintiff for all of those damages.

**36.** In addition, defendant is liable to account and pay to plaintiff plaintiff's proportionate share of all income produced by iNet Web Consultants from the beginning of its business and in the future. The amount of that share is the amount of plaintiff's percentage ownership of the stock of City Netlinks.

## Count 5: Punitive Damages

**37.** In committing the unlawful acts and omissions described in paragraphs 1-36 above, defendant acted intentionally, willfully, and with malice. Alternatively, defendant acted recklessly.

**38.** Defendant is liable to plaintiff for punitive damages under each of the causes of action alleged above for which the law allows recovery of punitive damages.

## Prayer for Relief

The plaintiff requests the following relief:

**(a)** A judgment against defendant in an amount of up to $500,000 for the amount of all compensatory damages incurred by plaintiff as a result of defendant's unlawful acts and omissions;

**(b)** A judgment requiring defendant to pay all of plaintiff's costs and expenses of litigation, including reasonable attorney's fees;

**(c)** An award of prejudgment interest in the maximum amount allowed by law;

**(d)** A judgment against defendant for punitive damages in an amount of up to $1,000,000; and

10

Case 3:12-cv-00904   Document 1   Filed 08/31/12   Page 10 of 11 PageID #: 10

**(e)** Any additional relief authorized by law.

## Jury Demand

The plaintiff demands a jury trial.


_____
Kenneth R. Jones, Jr. (TN BPR #7278)

Jones Hawkins & Farmer, PLC
150 Fourth Avenue North, Suite 1820
Nashville, Tennessee 37219
(615) 726-0050
(615) 726-5177 (facsimile)
kjones@joneshawkinsfarmer.com

*Attorney for the Plaintiffs*